IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRYL KENDRA WONGUS, #325-629,       *
        Plaintiff,

                                    *

     v.                         CIVIL ACTION NO. WDQ-06-183

                                    *

CAMBRIDGE POLICE DEPT., et al.,
        Defendants.           *
                              ******

## **MEMORANDUM**

On January 20, 2006, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. §1983, seeking money damages and injunctive relief.[1]  Counsel for Defendants has filed a dispositive motion (*see* Paper No. 12), which shall be treated as a Motion for Summary Judgment.  Plaintiff has responded, Defendants have filed a Reply, and Plaintiff has filed a surreply. Paper Nos. 18- 20.  No hearing is needed to resolve the pending motion, which will be granted in part and denied in part. *See* Local Rule 105.6 (D. Md. 2004).

### 1. **Factual Background**

Plaintiff states that on February 14, 2004, he was in the area of Pine and Washington Streets in Cambridge, Maryland when he observed Defendants beating a young male.  Plaintiff spoke up, asking, "Why are they beating him like that?"  Defendant Johnson told Plaintiff to "Shut up and get back!"  Plaintiff complied.  Thereafter, Defendant Jones told Plaintiff to put his hands in the air. Plaintiff complied,  but Jones  knocked him to  the ground and sprayed him with mace.  Plaintiff claims he was handcuffed and lifted approximately five feet off of the ground by Defendants who then slammed him into the ground, knocking him unconscious.  Plaintiff states that while restrained he was kicked by Defendants and dragged to a police vehicle.  Upon arriving at the Cambridge Police Department, Plaintiff asked to be taken to the hospital.  Johnson refused.  Plaintiff was taken

---

[1]Plaintiff's Motion for Leave to Proceed in Forma Pauperis (Paper No. 2) shall be granted.

for medical treatment four hours later.  Paper No. 1.

Defendants' version of events differs dramatically from Plaintiff's.   According to Defendants, on February 15, 2004, at approximately 2:40 p.m., officers of the Cambridge Police Department responded to a police dispatch report of a man with a gun near the intersection of Center and Washington Streets.  Defendants Foster and Shorter, the first officers on the scene, spoke with several people in the area, inquiring whether any of them had called the police regarding a black male wearing a hooded sweatshirt and brandishing a gun. Plaintiff approached and began yelling that the police were "profiling a black man as having a gun."  Foster advised Plaintiff that the police were responding to a citizen complaint.  Plaintiff continued yelling at the officers that they were profiling blacks.  Foster and Shorter then left the area.

Shortly thereafter, Foster and Shorter received a call for assistance from other officers in the area concerning a fleeing subject near the intersection of Pine and Washington Streets.  They responded to the call and saw a man  matching the initial description given being pursued by another officer.  The man was overtaken by officers.  A struggle ensued when the man refused to be handcuffed.  At this time, Plaintiff arrived at the scene, which was one block from where he first encountered Foster and Shorter. Plaintiff began yelling "Let him go!" and  "They're beating a black man."  Jones twice advised Plaintiff to stop yelling and ordered him to leave the area as he was creating a public disturbance before a crowd of approximately 30 people who had gathered near the scene.[2]  Plaintiff refused to comply with Jones's orders.  Johnson warned Plaintiff a third time, and again Plaintiff refused to comply.  Jones then advised Plaintiff that he was under arrest for failing to obey a lawful order of a police officer and for disturbing the peace.  As Jones grabbed Plaintiff's left arm to effect the arrest, Plaintiff yelled "Fuck you" and pushed Jones in the chest with both

---

[2]Defendants state that the crowd had gathered  in response to Plaintiff's yelling and vehicles passing the scene slowed or stopped to observe.

hands.  Defendants Jones, Cook and Johnson then took Plaintiff to the ground in an attempt to handcuff him.  While on the ground, Plaintiff continued to struggle with the officers, resisting and attempting to escape arrest.  The officers forcibly pulled Plaintiff's arms in order to handcuff him. During the struggle Johnson sprayed Plaintiff with a single stream of pepper spray. In attempting to avoid the spray, Plaintiff moved his head from side to side on the road surface; he also attempted to keep his arms and hands under his stomach, against the pavement.  During the struggle he yelled, "They're beating me up! Help me!"[3]  Paper No. 12, Exs. 1 and 2.  Defendants pulled Plaintiff to his feet, whereupon he kicked Defendant Todd in the stomach.  Plaintiff was searched, placed in the patrol car and transported to headquarters for processing. Defendants maintain that at no time during the arrest did Plaintiff lose consciousness, complain of injury, or request medical assistance.

Approximately ten minutes later Jones left the scene.  When he arrived at the police station Jones observed a minor cut on Plaintiff's forehead and heard Plaintiff complain that his forehead was cut.  Johnson advised Plaintiff that he would arrange to have Plaintiff transported by ambulance to the hospital for examination but Plaintiff refused to be taken to the hospital. Johnson attempted to treat the cut himself but Plaintiff refused treatment. Johnson gave the bandage to Plaintiff and instructed him that he could apply the bandage himself. Plaintiff remained loud and defiant. *Id.*

Plaintiff was placed in the holding cell at approximately 3:40 p.m. Officers noted Plaintiff's physical condition was "good."  *Id*. Ex. 6. When Plaintiff calmed down he agreed to be examined at the hospital after he was seen by the commissioner.  Plaintiff was taken to the Dorchester General Hospital Emergency Room where he received stitches for a 1.5 centimeter laceration to the forehead.

On November 17, 2004, Plaintiff was tried by a jury and convicted of possession of a controlled dangerous substance not marijuana,  two counts of second degree assault against a police

---

[3]During the struggle a clear cellophane bag fell from Plaintiff's pocket.  The substance in the bag tested positive for crack cocaine. *Id*., Ex. 2 and 3.

officer, disorderly conduct, failure to obey a lawful order, and resisting arrest. *Id*., Ex. 9.

## 2. Standard of Review

"[S]ummary judgment should be granted in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Haavistola v. Community Fire Co. of Rising Sun*, 6 F.3d 211, 214 (4th Cir. 1993) (citations omitted). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U. S. 317, 322 (1986). "In ruling on a motion for summary judgment, a court must believe the evidence of the non-movant, and all justifiable inferences must be drawn in the non-movant's favor." *See Estate of Kimmell v. Seven Up Bottling Co.*, 993 F.2d 410, 412 (4th Cir. 1993) (citation omitted).

## A.     Excessive force during arrest

### 1.     *Heck v. Humphrey*

Clearly the parties' versions of events concerning the arrest differ dramatically. Defendants argue that Plaintiff's claim is subject to dismissal because he cannot illustrate that his charges have been dismissed or invalidated; thus, a finding for Plaintiff on this claim would call into question his convictions for assault, disorderly conduct, resisting arrest and failure to obey a lawful order, in direct contradiction with the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994).

The plaintiff in *Heck*, an inmate in the Indiana state prison system, sued the prosecutors and a state employee who had participated in the investigation leading to plaintiff's conviction.  He sought compensatory damages and alleged  defendants had violated his civil rights by knowingly destroying evidence which was exculpatory in nature and had also caused an unlawful voice identification procedure to be used at trial.   In concluding that the complaint should be dismissed, the Supreme Court rejected the lower court's reasoning that a § 1983 action should be classified as a habeas corpus action:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit.

*Id.* at 486-7.

Defendants maintain that Plaintiff's averment that he did not touch any officer in an offensive way or strike an officer,  if believed in the instant proceedings,  would "necessarily imply the invalidity of his state court misdemeanor convictions for second degree assault and resisting arrest."   Paper No. 12.  Even if Plaintiff is precluded from maintaining that he did not resist arrest or strike an officer,  however,  he also claims that  after he was handcuffed and subdued by Defendants they lifted him off the ground and slammed him into the pavement. Plaintiff maintains that this conduct was excessive. Without the full record of the state court criminal proceedings, this

5

Court is unable to say at this juncture that a finding in favor of Plaintiff on this issue would be precluded by the state court criminal convictions, or would create "two conflicting resolutions arising out of the same or identical transaction." *Heck,* 512 U.S. at 484.  The Court agrees that the events that came before the subduing of Plaintiff appear to be inextricably intertwined with his state court convictions, and will not be relitigated here.  Exactly what happened after Plaintiff was subdued by Defendants, however, and thus whether Plaintiff is entitled to damages, is a question that remains to be decided.  Even if Plaintiff's claims regarding his interaction with Defendants up to his having been subdued by them are subject to dismissal under *Heck*, his claim that after he was subdued and under arrest he was lifted and purposefully slammed into the ground does not implicate his convictions stemming from this event.

The Court is mindful that this Circuit has not squarely addressed this issue, Other circuits have held that a conviction for assault on a police officer may preclude, under *Heck,* the filing of an excessive force claim. Defendants rely heavily on the Fifth Circuit's ruling in *Hudson v. Hughes*, 98 F. 3d 868 (5th Cir. 1996), which barred a plaintiff from bringing an excessive force claim when he had been convicted of battery of an officer during the course of his arrest.

Under Louisiana law,

> self-defense is a justification defense to the crime of battery of an officer. To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a forcible offense against himself.  Because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that [defendants] used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer.  This is true because the question whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) were justified, which if it were, necessarily undermines that conviction.

*Id.* at 873.

The *Hudson* case however, is distinguishable from the instant case. Defendants do not maintain that Maryland's law mirrors Louisiana's.  Moreover, as outlined above, the finding of excessive force once Plaintiff was subdued and taken into custody would not call into question the validity of any of Plaintiff's convictions.  Plaintiff could have assaulted the officers, failed to obey a lawful order and resisted arrest, yet   the amount of force employed to gain his compliance once under arrest might be excessive under the constitution.

This Court finds more persuasive the Seventh Circuit's reasoning in *VanGilder v. Baker*, 435 F.3d 689 (7th Cir. 2006), that *Heck* does not preclude an excessive force claim in this case:

> Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages. Put another way, police subduing a suspect could use as much force as they wanted-and be shielded from accountability under civil law-as long as the prosecutor could get the plaintiff convicted on a charge of resisting. This would open the door to undesirable behavior and gut a large share of the protections provided by § 1983.

*Id*. at 692.

### 2.      *Reasonableness of Force Used*

Defendants maintain that even if Plaintiff's claim of excessive force is not barred by *Heck*, his claim nevertheless would fail.  Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard.  *See Graham v. Connor*, 490 U. S. 386, 395 (1989).  This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted).  Factors to be included in making this determination include the severity of the crime, whether there

is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee.  *See Graham*, 490 U.S. at 396.  The determination is to be made "from the perspective of a reasonable officer on the scene."  *Id*.  "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm."  *Elliot v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996).  "The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

According to Defendants, Plaintiff was ordered to leave the scene and to stop creating a public disturbance. He refused.  According to Defendants, when they moved to arrest Plaintiff, he struck them and continued to resist his arrest, requiring Defendants to "take [him] down" and use pepper spray to subdue him. Plaintiff flatly contradicts Defendants' contentions both in his original Complaint, filed under the penalties of perjury, and in his opposition to their Motion for Summary Judgment. Paper Nos. 1 and 18.  Additionally, attached to his opposition is an unverified statement from a witness claiming that after Plaintiff was handcuffed and was being escorted from the scene the officer "just drop him straight on his face and stomach."  Paper No. 18, Statement of Troy Cephas.

In light of the foregoing, the Court is unable to find that the force used by Defendants was reasonable under the circumstances and the Motion for Summary Judgment as to this claim shall be denied.

### 3.    *Qualified Immunity*

Defendants claim that even if their actions were unconstitutional they are entitled to qualified immunity fails.  "[G]overnment officials performing discretionary functions generally are shielded

8

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982).  "In determining whether a government official is entitled to qualified immunity, '[courts] must (1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable offic[ial] would have understood that the conduct at issue violated the clearly established right.'" *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (quoting *S. P. v. City of Tacoma Park*, 134 F.3d 260, 265 (4th Cir. 1998)); *see also Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998).

Here, Plaintiff alleges that his right to be free from an excessive use of force was violated. In determining whether the right claimed to be violated is clearly established "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) *aff'd*, 526 U.S. 603 (1999). "If there exists a 'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies." *Korb v. Lehman,* 919 F.2d 243, 247 (4th Cir. 1990). "The 'meaning' of the Fourth Amendment, at least when stated in broad philosophical terms, is relatively clear.  The precise action or combination of actions, however, which will infringe a particular suspect's Fourth Amendment rights is often difficult for even the constitutional scholar to discern because the legal doctrine has developed and continues to develop

incrementally." *Tarantino v Baker*, 825 F.2d 772 (4th Cir. 1987) (holding even when court concludes that police officer violated constitutional right, officer remains shielded from civil liability unless right was clearly established.)

The third prong of the qualified immunity analysis, reasonableness, is an objective standard. *See Anderson v Creighton*, 483 U.S. 635, 638 (1987). The proper inquiry is whether a reasonable officer could have believed the application of force was lawful. *Id.* at 641. Under the facts of this case as stated *supra*, the Court does not find that a reasonable officer could have believed that slamming an already subdued and handcuffed arrestee to the ground was reasonable.

**B.    Failure to provide medical care**

Plaintiff maintains that Defendants failed to provide him medical care for his injuries. In order to state a constitutional claim for denial of medical care, he must demonstrate that the actions of the defendants (or their failure to act) amounted to deliberate indifference to a serious medical need.[4] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that objectively, Plaintiff was suffering from a serious medical need and that, subjectively, Defendants were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). [A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v.*

___

[4]Plaintiff's right to adequate medical care is evaluated under the Due Process Clause of the Fourteenth Amendment. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Notwithstanding this standard of review, the Fourth Circuit has held that the deliberate indifference standard set forth in *Estelle v. Gamble* is applicable to pretrial detainees. *See Loe v.Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Whisenant*, 739 F.2d at 164.

*O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th

Cir. 1991)).   In determining whether an alleged deprivation of medical care amounts to a

constitutional violation, courts must consider the severity of the medical problem, the potential for

harm if medical care was denied or delayed, and whether such harm actually resulted from the lack

of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill.

1984) (citation omitted). Proof of an objectively serious medical condition, however, does not end

the inquiry.

The second component requires "subjective recklessness" in the face of the serious medical

condition. *Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both

of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*,

129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged

inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who

lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach*

*Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.   If the

requisite subjective knowledge is established, an official may avoid liability  "if [he] responded

reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk a defendant actually knew

at the time. *See Brown v. Harris,*  240 F. 3d 383, 390 (4th Cir. 2001), *citing Liebe v. Norton*, 157 F.

3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not

those that could have been taken).

The uncontroverted records reveal that Plaintiff was taken into custody and transported to

the Dorchester County Police Station at approximately 3:40 p.m. on February 15, 2004. Jones saw

a cut on Plaintiff's forehead which was bleeding. Johnson offered to have Plaintiff transported to the hospital for evaluation, pursuant to departmental policy, and Plaintiff declined. Johnson attempted to treat the cut himself but Plaintiff refused such treatment. Johnson gave the bandage to Plaintiff and advised that he could apply it himself. Paper No. 12. Defendants state that Plaintiff calmed down and permitted himself to be transported to Dorchester General Hospital for treatment. Plaintiff has provided copies of his emergency room records. Paper No. 18. The records reveal that Plaintiff arrived in the emergency room at 6:45 p.m. A 1.5 centimeter cut on his forehead was sutured. A second abrasion on his forehead was noted and minor abrasions were observed on his knees. *Id*. X-rays of Plaintiff's head and left knee were taken and were negative for signs of fracture.

  Under the facts as alleged by Plaintiff the Court does not find that Plaintiff's injuries were objectively serious or that any delay in transporting Plaintiff for treatment was subjectively unreasonable. Accordingly, Defendants' motion for summary judgment shall be granted as to Plaintiff's claim regarding denial of medical care.

### 3. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted in part and denied in part. A separate Order follows.


July 26, 2006                                          /s/
Date                                        William D. Quarles, Jr.
                                            United States District Judge